FILED
SUPERIOR COURT
OF GUAM

2014 DEC -1 PM 4: 58

CLERK OF COURT
BY



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MARIA A. GANGE, JESUS CRUZ CHARFAURAOS, ANA A. CHARGUALAF, JESUS G. AGUIGUI, for themselves and on behalf of all others situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT OF GUAM, GUAM ANCESTRAL LANDS COMMISSION by and through its individual Commissioners (for injunctive relief only to prevent a transfer) and DOES One (1) through Three Hundred (300), inclusive <br><br> Defendant. | CIVIL CASE NO. CV 1461-10 <br><br> **DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 5th day of November, 2014, for hearing on four motions: the Plaintiffs' Motion for Class Certification, the Plaintiffs' Motion to Award Attorney's Fees, the Plaintiffs' Motion to Award the Named Plaintiffs a Service Fee of $30,000 Each, and the Defendants' Motion for Clarification. Attorney Curtis C. Van de veld represented the Plaintiffs, and Assistant Attorney General Kathy A. Fokas represented the Defendants. For the reasons set forth below, the Plaintiffs' Motion for Class Certification is DENIED, the Plaintiffs' Motion to Award the Named Plaintiffs a Service Fee of

*ORIGINAL*

$30,000 Each is DENIED, the Plaintiffs' Motion to Award Attorney's Fees is GRANTED in part and DENIED in part, and the Court CLARIFIES the status of the case.

## FACTUAL AND PROCEDURAL HISTORY

In 1999, *I Liheslaturan Guåhan* (the Legislature) passed Guam Public Law 25-045, the Guam Ancestral Lands Act, ("the Act"), codified at 21 GCA Chapter 80. The Act established a Commission that would accept and adjudicate claims to lands that had been taken from a claimant's ancestors, applying to takings that occurred as long ago as 1930. The purpose was to restore lands taken by the United States federal government in the twentieth century to the descendants of the persons the lands were taken from. The United States Congress had recently transferred some of the ancestral lands in question from the United States armed forces to the Government of Guam. The transferred lands included, among others, Lot Naval Radio Station, of about 581 acres, and Lot Andersen South, of about 395 acres. These two lots total approximately 976 acres in total.

The Act also recognized that certain lands the federal government took during the twentieth century could not be returned to private ownership, because those lands were still in public use, either by the federal government or the Government of Guam. The most notable example of this unreturnable taken land that is in the Government of Guam' control is the land upon which Antonio Won B. Pat International Airport stands.

Accordingly, the Act authorized the creation of the Land Bank Trust, in which the Commissioners of the Ancestral Lands Commission would take legal title to certain lands as trustees. The Land Bank's assets included former Spanish Crown lands. These were not ancestral lands, but former Spanish government lands that Spain ceded to the United States in the Treaty of Paris of 1898, some of which the federal government had conveyed to the

Government of Guam. The Act also specified that any other non-ancestral lands conveyed by the federal government to the Government of Guam in the future would be placed in the Land Bank Trust. The trust beneficiaries were dispossessed ancestral landowners, and the trust was to be managed so as to pay out income to those dispossessed ancestral landowners.

Shortly before and on July 13, 2010, the Legislature passed and Acting Governor Mike Cruz signed Bill No. 278-30, which became Guam Public Law 30-158. This Act required the Ancestral Lands Commission to deed Lot Naval Radio Station and Lot Anderson South to the descendants of landowners whose ancestors owned lands that now constitute Antonio Won B. Pat International Airport. This was to the exclusion of dispossessed ancestral landowners whose ancestral lands were elsewhere than the airport.

A group of the excluded Trust beneficiaries sued to enjoin the Commission from transferring the lands. In the alternative, they pleaded for a payment of just compensation. The Court granted a temporary restraining order on September 8, 2010.

After a great deal of further proceedings, on February 15, 2013 the Court heard oral argument on the Plaintiff's Motion for Partial Summary Judgment. The Court granted the motion in a Decision and Order of August 16, 2013, concluding that Public Law 30-158 constituted an attempted taking of the Plaintiffs' private property, without a legitimate public purpose, and without rendering just compensation. Accordingly, the Court granted the Plaintiff's requested permanent injunction. On August 30, a formal Judgment was issued enjoining the Defendants from transferring Lot Naval Radio Station and Lot Anderson South.

Ten days later, on September 9, 2013, the Defendants filed a motion titled GRCP Rule 59 Motion for the Court to Alter or Amend its August 30, 2013, Judgment. The Plaintiffs filed an Opposition to this motion on October 21, 2013, and the Defendants filed a Reply in support

on November 13, 2013. The Plaintiffs filed a Motion to Correct an Omission in the Rule 54(b) Judgment or Alternatively to Amend the Judgment by Certifying the Class and Awarding Attorney's Fees Therein on October 2, which the Defendants opposed on October 25, and the Plaintiffs replied to the opposition on November 13. Meanwhile, Vicente P. Crawford had appealed the Order of July 29, 2013 denying his motion to intervene. The Supreme Court granted Mr. Crawford's Motion for Dismissal of Appeal, without prejudice, on February 7, 2014.

This Court heard the Defendants' motion to alter or amend on April 4, 2014. Later that day, the Plaintiffs filed a supplemental memorandum in favor of class certification, and the Defendants filed a Motion for Clarification. The Court denied the Motion to Alter or Amend in a Decision and Order issued April 16, 2014. The Plaintiffs filed a Motion to Award Attorney's Fees, and a Motion to Award the Named Plaintiffs a Service Fee of $30,000 Each, on April 21. The outstanding motions were heard at a hearing on November 5, 2014, whereupon the Court took the motions under advisement.

## DISCUSSION

### I. Class Certification

The Plaintiffs have moved to certify a class. Pls.' Mot., Dec. 9, 2010; see Pls.' Supp. Mem., Apr. 4, 2014. The parties dispute whether Rule 23 requires or enables an analysis of the "need" for class certification to provide for the remedy sought. Contrast Pls.' Supp. Mem. 2-4, Apr. 4, 2014, with Defs.' Consolidated Opp'n 10-15, May 16, 2014.

Class certification under Rule 23 requires both that all the "[p]rerequisites to a class action," of Rule 23(a)(1)-(4) be met, and also that the facts meet at least one of the specific types of class actions in Rule 23(b)(1)-(3). See Guam Rule of Civil Procedure 23; see Wal-Mart

Stores, Inc. v. Dukes et al., 131 S.Ct. 2541 (2011) (applying the analogous federal rule). Rule 23(b)(2) provides for class actions if: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole..." Guam Rule of Civil Procedure 23(b)(2). In contrast, claims for individualized relief do not satisfy Rule 23(b)(2), because Rule 23(b)(2) classes are appropriate if a single injunction or declaratory judgment would provide relief to each member of the class. Wal-Mart Stores, Inc. v. Dukes et al., 131 S.Ct. at 2557.

Of the three types of class actions in Rule 23, if any are applicable, it is a b(2) class action. The Plaintiffs sought, as their preferred remedy, injunctive relief enjoining and restraining the Commissioners of the Ancestral Land Commission from deeding or transferring Lot Naval Radio Station and Lot Anderson South, and declaratory relief declaring that Public Law 30-158 is unconstitutional and inorganic. Pls.' Compl. 9, Aug. 25, 2010. The Plaintiffs also prayed for just compensation in a condemnation action, but only as an alternative remedy to the requested injunction and declaration. Id. at 9-10. The Defendants vigorously dispute the allegation that Public Law 30-158 constitutes a taking, but agree that if it is a taking, then the proper remedy is an injunction rather than payment of just compensation, and argue that it was never the intent of the Legislature to take any private property. Gov't's Position on the Issues the Ct. Ordered Briefed on Nov. 20, 2012 2-3, Feb. 1, 2013. The Court has ruled that the public law is a taking of private property without a legitimate public purpose, and accordingly enjoined the transfer of the two lots. Gange et al. v. Government of Guam et al., CV 1461-10, Decision and Order 8 (Super. Ct. Guam, Aug. 16, 2013), Judgment (Aug. 30, 2013); see, e.g. Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 245 (1984) ("the Constitution forbids even a

compensated taking when executed for no reason other than to confer a private benefit on a particular private party.").

The other two types of class actions, (b)(1) and (b)(3) class actions, are not applicable to the facts of the case. This is not a Rule 23(b)(1) case, because multiple adjudications would neither establish incompatible standards of conduct for the Commissioners, nor would multiple suits dispose of the interests of the other members. See Guam Rule of Civil Procedure 23(b)(1). Had there been multiple inconsistent and varying adjudications, with multiple sets of plaintiffs suing to enjoin the transfer of the lots, and if one action was successful and the other unsuccessful, the Commissioners could comply with the action in which the plaintiffs were victorious without falling afoul of any court order in the other action. Nor would one adjudication dispose of the rights of other plaintiffs, who would not be bound by litigation they were not party to. See Guam Rule of Civil Procedure 23(b)(1); see Zahnen v. Limtiaco, 2008 Guam 5 ¶ 10 (requiring an identity of parties or privies in a prior suit and the current suit for a claim to be precluded by previous litigation). Individualized money damages, or any sort of money damages, are not at issue, making application of Rule 23(b)(3) inappropriate. See Dukes, 131 S.Ct. at 2558 (concluding that the increased procedural protections and right to opt out provided to putative class members by Rule 23(b)(3) are required because (b)(3) classes are those which deal with money damages claims where the class members may prefer to individually control a separate action, and not actions for injunctive or declaratory remedies where individual actions would be unworkable or superfluous).

The dispute between the parties over class certification is, in essence, over whether it is proper for a court to review the necessity of certifying a Rule 23(b)(2) class if the Plaintiff's victory would secure the rights of the absent class members. See Pls.' Supp. Mem. 2, Apr. 4,

2014 ("There is currently a division between the Circuits as to whether a 'necessity' review is required when ruling on a motion to certify a class."); see Defs.' Consolidated Opp'n 10-11, May 16, 2014 ("The clear majority rule is that 'need' is a proper consideration...and that class certification may be properly denied where a class is unnecessary to obtain the full measure of relief sought..."). The Plaintiffs rely on Ollier v. Sweetwater Union High School Dist., 251 F.R.D. 564 (S.D. Cal. 2008), for two propositions: first, that the Ninth Circuit does not recognize a "need" requirement for an injunction in determining class certification, and second, that even if a necessity analysis is required, dangers of mootness, settlement, and potential running of a statute of limitations provides for need for class certification. Pls.' Supp. Mem. 3, Apr. 4, 2014.

In contrast, the Defendants point to M.R. v. Board of School Com'rs of Mobile County, 286 F.R.D. 510 (S.D. Ala. 2012). Defs.' Consolidated Opp'n 11-13, May 16, 2014. In Mobile County, the court engaged in a thorough review of federal case law on the need for a class-wide injunction before certifying a class, concluding that the weight of authority favored considering need. See Mobile County, 286 F.R.D. at 518 n.11 (quoting, among other cases, Kansas Health Care Ass'n v. Kansas Dep't of Social and Rehabilitation Serv., 31 F.3d 1536, 1548 (10th Cir. 1994) ("...a class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs..."), and Dionne v. Bouley, 757 F.2d 1344, 1356 (1st Cir. 1985) ("when the same relief can be obtained without certifying a class, a court may be justified in concluding that class relief is not appropriate.")); see also 7A Charles Alan Wright et al., Federal Practice and Procedure § 1785.2 (3d ed.) ("the need requirement now seems well-accepted as an appropriate consideration when certifying a Rule 23(b)(2) action."). The Defendants also argue that the exceptions of Ollier v. Sweetwater Union High School Dist.

are not applicable, considering the current procedural posture of the case. Defs.' Consolidated Opp'n 14-15, May 16, 2014.

The Court is persuaded by the Defendants' argument. The remedy sought by the Plaintiffs and imposed by the Court is an injunction: "The Government of Guam and the Guam Ancestral Lands Commission and the individual Commissioners thereof are ENJOINED from transferring Lot Naval Radio Station and Lot Andersen South, Public Law 30-158 notwithstanding." Gange et al. v. Government of Guam et al., CV 1461-10, Judgment (Aug. 30, 2013). By preventing transfer of the lands, the injunction does not apply only to the specific named plaintiffs' interests in future Land Bank Trust income, but benefits and applies to the interests of all the absent trust beneficiaries. The injunction is the exact same remedy as would have been granted to a class, and by not certifying the class additional unnecessary expense and delay is avoided. Also, considering the current procedural posture, where the Court withheld consideration of certification until after the merits decision was made, and that determination is in place and can only be disturbed by appellate reversal, there is no need for the absent beneficiaries to litigate themselves, either as part of a class or separately. Concerns that their latent causes of action may become mooted or barred by the statute of limitations are inapplicable, because the substantive relief any further litigation could provide them has been provided already.

The Court regards Guam Rule of Civil Procedure 23(b)(1) and 23(b)(3) as inapplicable to the present dispute, such that any class certification would be a Rule 23(b)(2) class. Because it is unnecessary to certify a 23(b)(2) class to provide the absent putative class members with relief, the Plaintiffs' Motion to Certify Class is DENIED.

**II. Service Fee**

The Plaintiffs also move to award a $30,000 service fee to each of the four named plaintiffs, or to their heirs or beneficiaries, relying on Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299 (N.D. Cal. 1995). Pl.'s Mot. 2-4, Apr. 22, 2014. In exercising its discretion to award the named class representative, the Van Vranken court addressed five factors: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken, 901 F.Supp. at 299. The Plaintiffs argue that in the case at bar, with a recovery of $75 million worth of real estate which would produce an income stream estimated to be $2.45 billion, fees of $30,000 to each of the four named plaintiffs, totaling $120,000, is reasonable under the Van Vranken factors. Pl.'s Mot. 2-4, Apr. 22, 2014.

The Defendants disagree on two bases. First, the Defendants also oppose granting class certification, and argue that there is no case authority for an award of a service fee to named plaintiffs in the absence of class certification. Defs.' Consolidated Opp'n 23, May 16, 2014. But even if the court should undergo an analysis of whether the named plaintiffs should receive a fee, the Defendants argue that, "there must be some evidence in the record demonstrating that the representative plaintiffs were involved." Id. at 24 (quoting In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation, 851 F.Supp.2d 1040 (S.D. Tex. 2012).

The Plaintiffs' cited case, Van Vranken v. Atlantic Richfield Co., was indeed a case in which the court had granted class certification, which this Court has not done. See Van Vranken, 901 F.Supp. at 295. The Defendants state they have not been able to find any case in

which service fees were given despite class certification being denied. Defs.' Consolidated Opp'n 23, May 16, 2014. Neither has the Court.

But even if the <u>Van Vranken</u> test or a similar one applied, the Plaintiffs have not met its elements. First, the motion is not accompanied by any declarations or affidavits from the named plaintiffs, or anyone else with personal knowledge of the relevant facts, to prove that the requisite elements have been met. All the court has to work with are unsworn statements by Attorney Van de veld in the motion memorandum itself. Second, even among these unsworn, conclusory statements, there is nothing that says the named plaintiffs have expended any time and effort on the litigation above and beyond hiring counsel, certainly nothing adequate to persuade the Court that the named plaintiffs have expended so much time and effort that it would be just for the Court to award them a cash bounty in addition to the injunction.

The Plaintiffs' Motion to Award the Named Plaintiffs a Service Fee of $30,000 Each is DENIED.

## III. Attorney's Fees

### A. The Common Fund Doctrine

As stated above, the Court determines that class certification is unnecessary in the present dispute. As no class has been certified, the Court cannot award attorney's fees on a class action basis.

As a default, under the "American Rule," followed by Guam, each side bears its own litigation expenses, including attorney's fees. <u>Fleming v. Quigley</u>, 2003 Guam 4 ¶ 7; <u>see also</u> <u>Guam Radio Servs. v. GEDA</u>, 2000 Guam 23 ¶ 9 ("Traditionally, a court did not have the power to grant the prevailing party attorney's fees unless lawmakers specifically provided them with such authority in a statute.") However, there are exceptions to the American Rule, allowing

for fee-shifting where authorized by statute, by contract, or in judicially established equitable circumstances. Fleming, 2003 Guam 4 at ¶ 7 (citing Young v. Redman, 128 Cal. Rptr. 86, 91 (Cal. Ct. App. 1976)). Citing California case law, the Guam Supreme Court has recognized the following equitable circumstances as exceptions: common fund, substantial benefit, private attorney general, third-party tort, and bad faith. Fleming, 2003 Guam 4 at ¶ 7 n.3 (citing Trope v. Katz, 902 P.2d 259, 263, 45 Cal. Rptr. 2d 241, 245 (Cal. 1995), and Young, 128 Cal. Rprt. at 92). The common fund doctrine is at issue in the case at bar. Pls.' Mot. to Award Att'y Fees 4-6, Apr. 21, 2014; Defs.' Consolidated Opp'n 19-21, May 16, 2014.

The common fund doctrine is a long-standing principle of equity, one which the U.S. Supreme Court recognized and applied in the late nineteenth century. See Trustees etc. v. Greenough, 105 U.S. 527 (1881) ("…it has been the common practice, as well in the courts of the United States as those of the States, to make fair and just allowances for expenses and counsel fees to the trustees, or other parties, promoting the litigation and securing the due application of the property to the trusts and charges to which it was subject."). To qualify for an award of attorney's fees under the common fund or common benefit doctrines, the victorious litigant must: 1) impart a substantial nonmonetary benefit or preserve a common fund, 2) the class of beneficiaries must be sufficiently identifiable, 3) the benefits must be able to be accurately traced, and 4) the fee must be able to be shifted with some degree of exactitude. Southeast Legal Defense Group v. Adams, 657 F.2d 1118 (9th Cir. 1981); see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 265 n.39 (1975).

The remedy won by Attorney Van de veld's efforts and awarded to the Plaintiffs was an injunction rather than money damages. Gange et al. v. Government of Guam et al., CV 1461-10, Decision and Order 8 (Super. Ct. Guam, Aug. 16, 2013). The Court granted the injunction on

the basis that the transfer of Lot Naval Radio Station and Lot Anderson South would be a taking of private property, without a public purpose, and with no payment of just compensation. Id. at 3-7. The parties did not dispute the issue of monetary compensation, and the Plaintiffs preferred the injunctive remedy. Id. at 7. There was no money judgment or pool of liquid assets that may easily be disbursed to the Plaintiffs as cash.

However, the fact that the remedy was injunctive and the asset that was preserved is illiquid does not necessarily mean that no fund was protected, such that the common fund doctrine is inapplicable. In contrast, in Simon v. City of Omaha, the Omaha City Council had labeled the plaintiffs' real estate as "blighted and substandard," which the plaintiffs feared was the first step toward an eminent domain taking. Simon v. City of Omaha, 677 N.W.2d 129, 132-33 (Neb. 2004). In response to a lawsuit the city council amended its redevelopment plan to remove the plaintiffs' real estate, but the trial court still denied the plaintiffs' request for attorney's fees. Simon, 677 N.S.2d at 133. On appeal, the Nebraska Supreme Court likewise denied attorney's fees under the common fund doctrine, reasoning that the common fund doctrine "presupposes the existence of a fund," and that the only fund plaintiffs could refer to, saving taxpayer dollars, did not qualify. Simon at 138.

But courts do not regard injunctive relief as valueless in a common fund case, and indeed recognize that an injunction or consent decree may be the most valuable part of a judgment or settlement to the plaintiffs, and must be considered when determining the appropriate attorney fee. See Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir. 2003) (stating that where obtaining injunctive relief accounted for a significant percentage of the fees expended, courts may use the common fund version of the lodestar method); see also Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 695 (S.D. Fla. 2014) (considering injunctive

relief valued at over $650 million alongside monetary relief of $300 million in determining appropriate attorney's fees).

In the case at bar, no money is being made immediately available to the Plaintiffs and no money judgment was granted, the remedy was entirely injunctive. But that does not mean that no fund was preserved or no benefit bestowed. The Court has previously stated that the nature of the Plaintiffs' property is not the land itself, but instead is income to be paid out from a trust: "The Plaintiffs clearly do not own the Tiyan lots in fee simple. Rather, they are the beneficiaries of a unique trust, born out of an acknowledgment of past and ongoing injustices committed against their ancestors, this trust holds the lots for their benefit." Gange et al. v. Government of Guam et al., CV 1461-10, Decision and Order 3 (Super. Ct. Guam, Aug. 16, 2013); see also 21 GCA § 80104(e) (2005) (requiring the Ancestral Lands Commission to administer all assets and revenues of the Land Bank, manage the lands, develop them to their highest and best use, and provide just compensation to the dispossessed ancestral landowners with the resulting income).

The present case is distinguishable from Simon v. City of Omaha. In Simon, the plaintiffs could identify no fund to which they held title as only taxpayers funds were involved, and the only interests of the plaintiffs that was potentially threatened were interests in real estate. Simon, 677 N.S.2d at 729. In the case at bar, the fund that this litigation protected and preserved is the stream of income to be paid out to the trust beneficiaries in the future.

The Defendants do not argue that the second and third requirements of the common fund doctrine, that the class of beneficiaries must be sufficiently identifiable, and the benefits must be able to be accurately traced, are not present in this case. See Defs.' Consolidated Opp'n. 19-21, May 16, 2014. However, the Defendants do argue against the fourth requirement of a common fund, that the fee must be able to be shifted with some degree of exactitude. Id. at 20-21. The

Defendants direct the Court's attention to <u>Southeast Legal Defense Group v. Adams</u>, and where the Ninth Circuit found that the fee could not be shifted with exactitude, and argue this case is similar, because the benefit of the injunction to each beneficiary depends on a careful case-by case analysis of the appraised value of the land originally taken. Defs.' Consolidated Opp'n. 20-21, May 16, 2014; <u>see</u> <u>Southeast Legal Defense Group v. Adams</u>, 657 F.2d 1118, 1125 (9th Cir. 1981).

In <u>Adams</u>, the plaintiffs argued that the relevant fund was the Oregon State Highway Fund, which the litigation had prevented from being diverted to other uses, and the beneficiaries of the litigation included the Oregon Transportation Commission, the State of Oregon, the residents of Oregon, and the taxpayers of Oregon. <u>Adams</u>, 657 F.2d at 1123. The Ninth Circuit noted that "sophisticated economic analysis would be required to gauge the extent to which the general public, the supposed beneficiary, as distinguished from selected elements of it, would bear the costs." <u>Adams</u> at 1123 (quoting <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 265 n.39 (1975)). Because determining which beneficiary bears what costs and distributing it in proportion to the benefits received was impossible, the common fund doctrine's elements were not met. <u>Adams</u> at 1123.

<u>Adams</u> is significantly different from the case at bar. Rather than the entire general public being the beneficiary of the litigation, in this case the beneficiaries are a much more limited group: the Land Bank Trust beneficiaries whose interests in the trust income would have been effectively extinguished had the land transfer been executed. And while the Defendants cite <u>Adams</u> for the proposition that pro rata methods of conferring benefits cannot be done in a common fund, at the page cited the Ninth Circuit was determining the proper allocation of costs of fees between the state defendants and immune federal defendants. <u>Adams</u> at 1125.

It is entirely appropriate to apply an attorney's fees award prior to determining exactly how much each beneficiary is entitled to, and such a determination does not negate the exactitude requirement: "Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery." Boeing Corp. v. Van Gemert, 444 U.S. 472, 479 (1980). In contrast to the impossible task of gauging and allocating benefits and costs across the entire population of Oregon in Adams, valuing the particular parcels of ancestral land that cannot be returned, and paying out trust income as just compensation accordingly, is already a statutory duty of the Ancestral Lands Commission. See 21 GCA § 80104(e) (requiring the Commission to use Land Bank Trust income to provide just compensation to ancestral landowners who cannot regain possession or title to their ancestral lands due to the lands' continued government or public use).

**B. Percentage of Recovery and Lodestar Methods of Determining Attorney's Fees**

There are two main approaches to valuing the attorney's fees in a common fund case, percentage of recovery and lodestar, the latter meaning hours of work times an hourly rate. In McDaniel v. County of Schenectady, the Second Circuit discussed the relative merits and demerits of both at length. McDaniel v. County of Schenectady, 595 F.3d 411, 418-19 (2d Cir. 2010). While the percentage of recovery method aligns the interest of attorney and client in that they both benefit from upside risk, it can also encourage the lawyer to settle a case quickly rather than forego alternative opportunities, and in cases of very large recoveries the fee award may be well out of proportion to the work performed. McDaniel v. County of Schenectady, 595 F.3d at 418-19. The lodestar method is especially appropriate in cases with little contingency risk, but can encourage overbilling and make work. McDaniel, 595 F.3d at 418.

The theory behind a percentage of recovery approach is market-mimicking, awarding the lawyer a fee award in line to what he might have received through negotiation with all the absent beneficiaries. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 51 (2d Cir. 2000). However, "we cannot know precisely what fees common fund plaintiffs in an efficient market for legal services would agree to, given an understanding of the particular case and the ability to engage in collective arm's-length negotiation with counsel." Goldberger v. Integrated Resources, Inc., 209 F.3d at 52. Moreover, "it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." In re Union Carbide Corp. Consumer Products Business Securities Litigation, 724 F.Supp. 160, 166 (S.D.N.Y. 1989).

Attorney Van de veld has directed the Court's attention to Guam Ancestral Lands Commission and Guam Economic Development and Commerce Authority Request for Proposals RFP-07-003, referring to Lot Naval Radio Station, and RFP-08-007, referring to Lot Andersen South. Decl. of Van de veld, Exs. 2, 3, Apr. 21, 2014. RFP-07-003 values Lot Naval Radio Station at $55 million, and RFP-08-007 values Lot Andersen South at $19,186,524.00. Id. Accepting these figures gives a total value of $74,186,524.00 for the two properties. Ague Point Development Corp. estimated the value of the income stream resulting from lease of Lot Naval Radio Station to be $1.8 billion. Decl. of Van de veld, Exs. 4-6, Apr. 21, 2014. Extrapolating from the fact that the value of Lot Anderson South is approximately 36% of the value of Lot Naval Radio Station, Mr. Van de veld estimates Lot Anderson South to yield an income stream of about $650 million. Pls.'s Mot. 3, Apr. 21, 2014. Attorney Van de veld proposes an award of 15% of the protected fund as his fee. Id. at 4. Accepting the estimated value of the two lots of land at $74,186,524, and treating that number as the size of the common fund, yields a requested fee award of $11,127,978.60.

The fee motion argues that 15% is reasonable, on account of the size of the fund, the excellence of the results and diligence of prosecution, risks of litigation, non-monetary benefits of the litigation, and significant financial and personal burdens incurred in prosecuting the case. Id. at 6-12. The Court commends Mr. Van de veld on his advocacy in the case thus far and sympathizes with the personal difficulties he has undergone, but nonetheless finds an award of $11,127,978.60 to be unreasonably large. The case is one of applying fairly well-settled law to essentially uncontroverted facts. It has not required the efforts of small armies of associate attorneys performing large amounts of discovery. Mr. Van de veld, a sole practitioner, has been able to successfully prosecute the case while maintaining an active practice. "The percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked." McDaniel v. County of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010). On the facts of this case, an eleven million dollar award would be an unjustified windfall. Therefore, the Court determines that the common fund method is inappropriate, and instead shall use the lodestar method.

The first step in determining the fee amount to be awarded under a lodestar approach is to multiply the reasonable hours worked by a reasonable hourly rate. E.g., Bowles v. Dep't of Ret. Sys., 847 P.2d 440, 450 (Wash. 1993). This initial number is then "adjusted upward or downward based on additional factors." Bowles, 847 P.2d at 450.

Many of the federal circuit courts have adopted lists of factors for trial courts to consider, making attorney's fees awards amenable to appellate review. A seminal case from the federal Fifth Circuit, Johnson v. Georgia Highway Express, Inc., has a list of twelve factors for courts to consider: time and labor required, novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the preclusion of other employment by the

attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the length and nature of the professional relationship with the client, and awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

However, Johnson and similar lists of factors have been criticized for offering little guidance so long as they do not come along with an analytic framework for application. See Copeland v. Marshall, 641 F.2d 880, 890 (D.C. Cir. 1980). In Copeland, the D.C. Circuit noted that the customary hourly fee is likely to be influenced by a host of other factors, such as required attorney skill, fixed versus contingent fees, time limitations, amount to be obtained, reputation of attorneys, and undesirability of the case. Copeland, 641 F.2d at 890. The most widely accepted analytic framework, thought to reduce the ambiguity and redundancy of the Johnson factors, is that of Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3rd Cir. 1973), also known as Lindy I, and its successor Lindy II, 540 F.2d 102 (3rd Cir. 1976). The Lindy cases reduced the relevant factors for determining the multiplier rate to: 1) the contingent nature of success in the case and 2) the quality of representation. See Copeland at 892-93. When determining the first factor, a court must be sure whether the hourly rate does not already build in a premium for risk contingency. Id. at 893. The second factor, quality of representation, should only result in an adjustment if the work is unusually good or bad. Id. at 293. That means that a further deviation should only occur if the lawyer discharged his duties with a degree of skill appreciably above or below the skill reflected in the hourly rate. Id. at 294; Lindy II, 540 F.2d 102, 117-118.

In statutory fee shifting cases, the federal Supreme Court has disapproved of enhancing lodestar awards above the benchmark of reasonable number of hours worked multiplied by a reasonable hourly rate, especially for enhancements for contingency risk. City of Burlington v. Dague, 505 U.S. 557, 567 (1992). The court reasoned that contingency risk is already reflected in the number of hours or in the hourly rate, and that allowing enhancements for contingency risk would incentivize lawyers to bring relatively meritless cases. Dague, 505 U.S. at 562-63. However, these concerns are of lesser import in common fund cases: "the policy consideration in Dague that militate for forbidding risk multiples in statutory fee-shifting cases have little force in common fund cases. Unlike in [statutory] fee-shifting cases, the fee award in a common fund case is ultimately charged against the plaintiffs' fund, rather than directly against the defendant. Thus, the defendant's liability is fixed..." Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 564 (7th Cir. 1994). Instead, "a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for [his or her] services.'" Florin, 34 F.3d at 565 (quoting In re Continental Illinois Securities Litigation, 962 F.2d 566, 569 (7th Cir. 1992)).

The Court concludes that a common fund has been created and the common fund doctrine applies, that the lodestar method is the proper method to determine the amount of attorney's fees, and that liability for the attorney's fees lies with the fund, the Land Bank Trust, which is managed by its trustees the Commissioners of the Ancestral Lands Commission. The Plaintiffs' Motion to Award Attorney's Fees is GRANTED in part and DENIED in part.

**C. Procedure for Determining Amount of Attorney's Fees**

In determining the proper amount of attorney's fees, in a common fund case, the court must become the fiduciary of the fund beneficiaries. In re Wash. Pub. Power Supply Sys. Sec.

*Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). Guam Rule of Civil Procedure 54(d)(2) provides the procedure for awards of attorney's fees. It states, in relevant part:

> (B) Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.
> (C) On request of a party or class member, the court shall afford an opportunity for adversary submissions with respect to the motion in accordance with Rule 43(e) or Rule 78. The court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court. The court shall find the facts and state its conclusions of law as provided in Rule 52(a).

Guam Rule of Civil Procedure 54(d)(2)(B), (C).

The merits Judgment, granting the Plaintiffs' requested injunction, was issued August 30, 2013. Gange et al. v. Government of Guam et al., CV 1461-10, Judgment (Super. Ct. Guam, Aug. 30, 2013). On October 2, 2013 Attorney Van de veld filed a Motion to Correct an Omission in the Rule 54(b) Judgment or Alternatively to Amend the Judgment by Certifying the Class and Awarding Attorneys Fees Therein. Pls.' Mot., Oct. 2, 2013. This motion was not filed within fourteen days of the entry of judgment, as ordinarily required by Rule 54(d)(2)(B). See Guam Rule of Civil Procedure 54(d)(2)(B). However, the Court has previously granted Mr. Van de veld permission to move for attorney's fees, notwithstanding any previously timeliness concerns. Gange et al. v. Government of Guam et al., CV 1461-10, R. Log 2 (Super. Ct. Guam, Apr. 4, 2014).

The attorney's fee motion filed on April 21, 2014 complied with Rule 54(d)(2)(B) in specifying the grounds under which Mr. Van de veld believes he is entitled to fees, and to the amount sought. See Pls.' Mot., Apr. 21, 2014. However, as the Court determines that the lodestar method, and not the percentage of recovery method, is the proper method to calculate

the fee award in this case, the Court is in need of further information and briefing to determine the proper amount.

Guam Rule of Civil Procedure 54(d)(2)(B) permits the Court to deviate from the default provision of fourteen days to move for attorney's fees. Considering the importance of the attorney's fees to the parties, to Mr. Van de veld, and to the absent trust beneficiaries, and considering the Court's obligation to act as a fiduciary for the fund beneficiaries, the Court shall extend the default timeline, and orders the following.

The Court ORDERS Mr. Van de veld, within thirty [30] days of the issuance of this Decision and Order, to file thee documents: 1) a declaration under perjury setting forth an itemized list of the reasonable hours worked on this matter and a reasonable hourly rate to provide for the benchmark lodestar figure; 2) a memorandum arguing for the correct multiplier to alter the lodestar benchmark, addressing the contingent nature of success and the quality of representation; and 3) draft findings of fact and conclusions of law setting forth the findings and conclusions that Mr. Van de veld requests that the Court adopt. The memorandum may also address whether or not an award of interest is proper to an attorney's fee award under the common fund rule, and if so, the proper interest rate and the date on which the interest began to accrue. The declaration, memorandum and draft findings of fact and conclusions of law shall also be served on the Office of the Attorney General.

Pursuant to Rule 54(d)(2)(C), the Court shall permit the Defendants to made adversary submissions with regard to the proper amount of attorney's fees, in accordance with Rule 43(e) or Rule 78. See Guam Rule of Civil Procedure 54(d)(2)(C). The Court shall also permit absent fund beneficiaries to make submissions regarding the amount of attorney's fees. Adversary submissions by the Defendants or absent fund beneficiaries, if any, shall be filed within sixty

[60] days of the issuance of this Decision and Order. Absent fund beneficiaries may appear and be heard in open court at the hearing to determine the amount of attorney's fees.

However, pursuant to Rule 54(d)(2)(C), the Court regards the issue of liability for fees as being adjudicated in this Decision and Order, and per the above analysis the liability falls on the assets of the Land Bank Trust, managed by its trustees the Commissioners of the Ancestral Lands Commission. See Guam Rule of Civil Procedure 54(d)(2)(C); see 21 GCA § 80104(e). The briefings and argument on the proper amount of attorney's fees shall not provide an opportunity to re-litigate the liability for the fees.

Should the Defendants or any absent trust beneficiaries make adversary submissions, Mr. Van de veld shall be permitted to file a reply to such submissions within seventy-five [75] days of the issuance of this Decision and Order.

Upon the Court's eventual issuance of Findings of Fact and Conclusions of Law setting forth the amount of attorney's fees, the Commissioners of the Ancestral Lands Commission, as trustees of the Land Bank Trust, shall have thirty [30] days to submit a proposed plan to pay the attorney's fees. Following the submission of the Commission's payment plan, Mr. Van de veld shall have an additional fifteen [15] days to file any objections.

**IV. Clarification**

The Defendants have moved for clarification. Defs.' Mot., Apr. 4, 2014. Accordingly, the Court clarifies the current status of the case.

The Court regards the Decision and Order of August 16, 2013 as setting forth its determination of the merits of the case, and the Judgment of August 30, 2013 as being a partial judgment that left some aspects of the case un-adjudicated. In this current Decision and Order,

the Court has adjudicated the questions of class certification, service fees, liability for attorney's fees, and method for calculating the fees.

Remaining before this Court are the proceedings to determine the proper amount of attorney's fees and the process by which these fees shall be paid to Mr. Van de veld. Unless ordered to the contrary by the Supreme Court, the Court shall first resolve these remaining questions, and then shall issue a final judgment, adjudicating all the claims and the rights and liabilities of all the parties.

## CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Class Certification is DENIED. The Plaintiffs' Motion to Award the Named Plaintiffs a Service Fee of $30,000 Each is DENIED, the Plaintiffs' Motion to Award Attorney's Fees is GRANTED in part and DENIED in part, and the status of the case is CLARIFIED.

The Court ORDERS Mr. Van de veld, within thirty [30] days of the issuance of this Decision and Order, to file a declaration under perjury setting forth an itemized list of the reasonable hours worked on this matter and a reasonable hourly rate to provide for the benchmark lodestar figure, a memorandum arguing for the correct multiplier to alter the lodestar benchmark, addressing the contingent nature of success and the quality of representation, and draft findings of fact and conclusions of law setting forth the findings and conclusions that Mr. Van de veld requests that the Court adopt.

The Court PERMITS adversary submissions by the Defendants and the absent fund beneficiaries with regard to the proper amount of attorney's fees, in accordance with Rule 43(e) or Rule 78. Adversary submissions, if any, shall be filed within sixty [60] days of the issuance of this Decision and Order. The adversary submissions may not address liability for attorney's

fees, but may only address the proper amount of fees. The Court shall also permit absent fund beneficiaries to appear and be heard in open court at the hearing to determine the amount of attorney's fees.

Should the Defendants or any absent trust beneficiaries make adversary submissions, the Court PERMITS Mr. Van de veld to file a reply to such submissions within seventy-five [75] days of the issuance of this Decision and Order.

Upon the Court's eventual issuance of Findings of Fact and Conclusions of Law, the Commissioners of the Ancestral Lands Commission, as trustees of the Land Bank Trust, shall be ORDERED to submit a proposed plan to pay the attorney's fees within thirty [30] days. Mr. Van de veld shall be PERMITTED to file any objections to the Commission's payment plan within an additional fifteen [15] days.

The hearing to determine the amount of attorney's fees shall be on **February 27, 2015 at 11:00 am**.

**IT IS SO ORDERED** DEC 0 1 2014 .

SERVICE VIA COURT BOX
I acknowledge that a copy of the
original hereto was placed in the
court box of:

Date: 12-1-14 Time: 503 pm
A. SANTOS
Deputy Clerk, Superior Court of Guam

_____
HONORABLE ARTHUR R. BARCINAS
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the
original hereto was placed in the
court box of: Van De Veld Law Office
AG's CIVIL
Date: 12-1-14 Time: 503 pm
A. SANTOS
Deputy Clerk, Superior Court of Guam